# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #035

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **1st day of July, 2014**, are as follows:

**BY CLARK, J.**:

2013-CC-2970        YANA ANDERSON v. OCHSNER HEALTH SYSTEM AND OCHSNER CLINIC
                    FOUNDATION (Parish of Jefferson)

                    Accordingly, we affirm the lower courts' denial of summary
                    judgment and remand for proceedings consistent with this opinion.
                    AFFIRMED AND REMANDED.

                    VICTORY, J., dissents for the reasons assigned by Justice Guidry.
                    GUIDRY, J., dissents and assigns reasons.

07/01/14

SUPREME COURT OF LOUISIANA

NO. 2013-CC-2970

YANA ANDERSON

VERSUS

OCHSNER HEALTH SYSTEM AND OCHSNER CLINIC FOUNDATION

ON SUPERVISORY WRITS TO THE TWENTY-FOURTH JUDICIAL
DISTRICT COURT FOR THE PARISH OF JEFFERSON

**CLARK, JUSTICE**

We granted this writ application to determine whether a plaintiff has a private

right of action for damages against a health care provider under the Health Care and

Consumer Billing and Disclosure Protection Act, La. R.S. 22:1871, *et seq.,*

(hereinafter referred to as "Balance Billing Act"). For the reasons that follow, we

find the legislature intended to allow a private right of action under this statute.

Additionally, we find an express right of action is available under La. R.S.

22:1874(B) based on the assertion of a medical lien. Accordingly, we affirm the

denial of summary judgment and remand for proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

The plaintiff, Yana Anderson, alleges that she was injured in a automobile

accident caused by a third party on or about August 4, 2010 in Baton Rouge,

Louisiana. Thereafter, she received medical treatment at an Ochsner facility.[1] For all

relevant times and purposes, Anderson was insured by UnitedHealthcare. Pursuant

to her insurance contract, Anderson paid premiums to UnitedHealthcare in exchange

for discounted health care rates. These reduced rates were available pursuant to a

---

[1] Ochsner Health Systems, Inc. and Ochsner Clinic Foundation operate hospitals and
medical facilities throughout Louisiana, including the facility at which Yana Anderson received
treatment.

member provider agreement, wherein UnitedHealthcare contracted with Ochsner to secure discounted charges for its insureds. Thus, at the time of Anderson's treatment, Ochsner was a "contracted health care provider" with UnitedHealthcare, as defined in La. R.S. 22:1872(6).

Anderson presented proof of insurance to Ochsner in order for her claims to be submitted to UnitedHealthcare for payment on the agreed upon reduced rate. However, Ochsner refused to file a claim with her insurer. Instead, Ochsner sent a letter to Anderson's attorney, asserting a medical lien for the full amount of undiscounted charges on any tort recovery Anderson received for the underlying automobile accident.[2]

On June 16, 2011, Anderson filed a putative class action against Ochsner, seeking, among other remedies, damages arising from Ochsner's billing practices.[3] Anderson, individually and on behalf of the class, claimed Ochsner's actions violated La. R.S. 22:1871, *et seq.,* ("Balance Billing Act), which prohibits Ochsner from collecting or attempting to collect from an insured patient any amount (1) owed by the health insurer, or (2) in excess of the contracted reimbursement rate.

In response, Ochsner filed a motion for summary judgment, arguing no private right of action exists under the Balance Billing Act.[4] Anderson opposed the motion, arguing La. R.S. 22:1871, *et seq.* allows a private right of action. The trial court denied Ochsner's motion for summary judgment, reasoning:

> The text of the Balance Billing Act, La. R.S. 22:1874 *et al* [sic], neither explicitly grants a right of private action nor prohibits a private right of action in this particular situation. After reviewing the language and structure of the statute, the purpose of the act, and the judicial opinions

---

[2] The lien asserted by Ochsner was for the amount of $2,824.99.

[3] Anderson additionally sought declaratory and injunctive relief.

[4] Ochsner also moved for summary judgment on the basis of Anderson's inability to prove damages. However, this issue is not presently before this court.

2

interpreting the statute, the Court finds that the legislature intended to provide a private cause of action under the Balance Billing Act.

. . .

The fact that the Balance Billing Act provides for partial enforcement through the Attorney General does not preclude a concurrent private right of action. In *Jefferson v. Chevron*, 713 So.2d 785, 791 (La. App. 4 Cir. 1998), the Fourth Circuit noted that a statutory scheme which provided for proceedings through the [A]ttorney [G]eneral, also provided a concurrent private right of action. It does not appear that a private right of action would run counter to the purpose of the act or the enforcement efforts of the [A]ttorney [G]eneral, nor were the litigants able to supply any such bases.

The Balance Billing Act clearly provides a private right of action when a provider wrongfully seeks reimbursement with an action at law. Ochsner argues that the instant case does not present an action at law because they only sent out lien letters and did not file a formal suit. The Court finds that to be a tenuous position, as La. R.S. 9:4754 clearly imposes legal duties and penalties for failure to heed a lien letter.

Ochsner applied for supervisory writs from the trial court's judgment. The court of appeal denied the writ, noting the existence of an adequate remedy on appeal.[5]

Ochsner subsequently filed a writ application with this court. We granted the application to determine whether Anderson has a private right of action for damages under the Balance Billing Act.[6]

### RULES OF STATUTORY INTERPRETATION

Both parties concede that because the statute is silent on the existence of a private right of action, the court, in interpreting the statute, is tasked with determining the legislative intent. The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. *Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 2010-0193, p. 9 (La. 1/19/11), 56 So. 3d 181, 187.

---

[5] *See Anderson v. Ochsner Health System*, 13-798, (La. App. 5 Cir. 11/21/13, _ So.3d _.

[6] *See Anderson v. Ochsner Health System*, 13-2970 (La. 3/14/14), 134 So.3d 1184.

3

The paramount question in all cases of statutory interpretation is legislative intent; ascertaining the reason that triggered the enactment of the law is the fundamental aim of statutory interpretation. *In re: Succession of Boyter*, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to unveil and enforce the intent of the legislature. *Id.*; *Stogner v. Stogner*, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766. Legislation is the solemn expression of legislative will; thus, interpretation of a statute involves primarily a search for the legislature's intent. La.Rev.Stat. § 1:4 (2004); La. Civ.Code art. 2; *Lockett v. State, Dept. of Transp. and Development*, 03-1767, p. 3 (La.2/25/04), 869 So.2d 87, 90.

In ascertaining the true meaning of a word, phrase, or section of a statute, the act as a whole must be considered. *Fruge v. Muffoletto*, 242 La. 569, 137 So.2d 336, 339. When doubt exists as to the proper interpretation of a statute, the title or preamble may be used to determine legislative intent. *Authement v. Shappert Engineering*, 02-1631, p. 8 (La. 2/25/03), 840 So.2d 1181,1186.

## DISCUSSION

La. R.S. 22:1874, in pertinent part, prohibits a health care provider from collecting or attempting to collect amounts from an insured patient in excess of the contracted reimbursement rate:

> A. (1) A contracted health care provider shall be prohibited from discount billing, dual billing, attempting to collect from, or collecting from an enrollee or insured a health insurance issuer liability or any amount in excess of the contracted reimbursement rate for covered health care services.

> (2) No contracted health care provider shall bill, attempt to collect from, or collect from an enrollee or insured any amounts other than those representing coinsurance, copayments, deductibles, noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable.

4

(3) However, in the event that any billing, attempt to collect from, or the collection from an enrollee or insured of any amount other than those representing copayment, deductible, coinsurance, payment for noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer as the liability of the enrollee or insured is based on information received from a health insurance issuer, the contracted health care provider shall not be in violation of this Subsection.

Anderson alleges that Ochsner's billing practices clearly violate this statute and nothing in the Act prohibits a private right of action. Contrarily, Ochsner argues, while nothing prohibits an individual remedy under this statute, nothing expressly grants one either. Rather, Ochsner contends La. R.S. 22:1877(A) provides an exclusive administrative remedy to the Attorney General:

(1) Any enrollee or insured who receives a bill or consolidated activity statement and bill from a contracted health care provider in violation of R.S. 22:1874(A) or a health insurance issuer acting on behalf of an enrollee or insured, may file a complaint with the Consumer Protection Division of the Department of Justice.

(2) The enrollee or insured, or health insurance issuer acting on behalf of the enrollee or insured, shall provide to the attorney general a copy of the original bill or consolidated activity statement and bill issued pursuant to R.S. 22:1873 and such additional information that may be requested by the attorney general, documenting an attempt by a contracted health care provider to collect or the collection of any amount from the enrollee or insured that is the liability of the health insurance issuer or that is in excess of the contracted reimbursement rate. In the event it is determined that billing activity was based on information received from the health insurance issuer, the contracted health care provider shall not be in violation, and the attorney general shall refer the violation to the commissioner.

(3) If the attorney general concludes, based on the information submitted, that a contracted health care provider has attempted to collect, or collected, any amount from the enrollee or insured that is the liability of the health insurance issuer or that is in excess of the contracted reimbursement rate, the attorney general may pursue remedies as provided for in R.S. 51:1401 et seq., beginning with a notice of unfair trade practices.

(4) Any contracted health care provider who has demanded or received payment from an enrollee or insured for any amount which he is

5

prohibited from billing or collecting by R.S. 22:1874(A) shall correct his billing and refund any such amount paid within forty-five days of service of the notice of unfair trade practices.

(5) The notice of unfair trade practices shall be satisfied by the attorney general within thirty days of receipt of information from the contracted health care provider that shows that any such billing or collection efforts were not in violation of R.S. 22:1874(A).

(6) In the event that a contracted health care provider fails to comply with a notice of unfair trade practices, the attorney general may proceed in accordance with the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401 et seq.

Ochsner avers this complaint process is exclusive, citing to the established legal maxim, *expressio unius et exclusio alterius*, which embodies the principle that when a law specifically enumerates certain items but omits other items, the omission is deemed intentional. Ochsner's argument follows, then, that the inclusion of the administrative remedy is the exclusion of a private right of action. Furthermore, Ochsner relies on La. R.S. 22:1877(A)(4)'s "safe harbor" provision as support for its argument that a private right of action cannot be implied in the statute. The safe harbor provision of the Balance Billing Act allows a health care provider to correct its illegal billing practice within 45 (forty-five) days of service of an unfair trade practice notice initiated by the attorney general. Ochsner avers that if a private right of action is allowed, the safe harbor provision of the administrative scheme would be effectively eviscerated.

Conversely, Anderson, in advancing the position that there is a private right of action under La. R.S. 22:1871, *et seq.* argues any time damage is caused by a breach of another's duty, whether imposed by law, contract or otherwise, civil liability attaches. The legislature's silence on the matter does not preclude the availability of civil actions. She asserts evidence of this conclusion lies in the use of the word

6

"may" in La. R.S. 22:1877(A)(1) ("an insured . . . *may* file a complaint with the Consumer Protection Division of the Department of Justice"(emphasis added)). Anderson contends if the legislature intended to make the complaint procedure the exclusive avenue available to an aggrieved insured/patient, it would have used the word "shall." La. R.S. 1:3 instructs that "shall" is mandatory and "may" is permissive. Thus, Anderson asserts the legislature's failure to use "shall" in the statute forecloses the conclusion that filing a complaint with the attorney general is the sole remedy.

Armed with the statute's language, rules of statutory interpretation, and the arguments made by the parties, we turn to our analysis. First, we look to the language of the statute itself and find nothing that expressly prohibits a private right of action. Courts can find the existence of a private right of action where the statute does not contain limiting language expressly barring such action. *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 09-1633 (La. 4/23/10), 35 So.3d 1053. Because the statute itself does not provide a clear, unequivocal expression that prohibits an individual remedy, further investigation into the legislature's intent is required.[7]

The title of the statute, La. R.S. 22:1871, *et seq,* is the "Health Care Consumer Billing and Disclosure Protection Act." This language makes clear that the legislature enacted this statutory scheme with protection of the consumer in mind. Accordingly, it is difficult to envision a law denying recourse to individuals when that law's principle aim is individual protection. Further, the act, when taken as a whole, reveals an intent to make the burden on the violator more onerous, not less. For example, the statute incorporates the provisions of La. R.S. 51:1401, *et seq.*, the

---

[7] By contrast, see La. R.S. 22:1879, another statute within the Consumer Protection Act, where the legislature expressly provided that the stated remedy "shall be the exclusive remedy for any violation and there shall be no independent cause of action by any person. . . ."

Unfair Trade Practices and Consumer Protection Law, which, among other functions: (1) provides a right of action to any person who suffers an ascertainable loss as a result of another person's use of unfair trade/commercial practices; and (2) allows for substantial penalties, including but not limited to, treble damages, attorney fees, and costs. The Balance Billing Act's reference to and incorporation of these Unfair Trade Practices and Consumer Protection provisions serve to illustrate the legislature's intention of exposing violators to more liability, not less. Thus, it would be incongruent to rule that a law intended to punish violators and protect consumers would operate in a manner that prohibits an individual's access to the courts to redress the very violation that is proscribed. Accordingly, we find the legislative intent supports the existence of a private right of action to sue under La. R.S. 22:1877.

In reaching this conclusion, we find the purpose of the administrative remedy granted to the attorney general is not thwarted by allowing private lawsuits. The procedure allows the attorney general, an official state representative, to enforce the law against illegal billing—a law that is justified by substantial public policy considerations that affect individuals statewide. Thus, the offending practice sought to be tamed is one of such import that the legislature gave additional powers of enforcement to a state agency. As stated above, the purpose behind this administrative regime is not to shield offenders against civil liability but to offer concurrent, albeit optional, relief via the attorney general's enforcement. Nothing in the statute or the Act, strips an aggrieved insured of his/her right to recover any property of which he/she was divested or prevent him/her from being made whole. *See generally* La.Const. Art. I, § 22 "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without

denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights;" La.Civ.Code art. 2315(A) "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

The discretionary nature of the grant of authority given to the attorney general to enforce the statute further evidences the existence of an implied private right of action in La. R.S. 22:1877. ("*If* the attorney general concludes [there is a Balance Billing Act violation] . . . the attorney general *may* pursue remedies as provided for in R.S. 51:1401 *et seq.*" La. R.S. 22:1877(A)(3).) A person's individual right to seek recourse for an alleged wrong should not depend on a governmental body's decision to pursue the offender. Furthermore, the attorney general is seeking to obtain relief that will not directly benefit the plaintiff. Accordingly, we find a private right of action grounded in individual restitution is available. It is separate and distinct from the administrative scheme that, due to a violation's statewide impact, has punitive roots. Despite their distinctness, the remedies can co-exist without either preventing the success of the other.[8]

Having found an implied right of action based on the legislative purpose and the spirit of the law, we advance to an alternative argument that may give Anderson a direct right of action. La. R.S. 22:1874(B) provides:

> *No contracted health care provider may maintain any action at law against an enrollee or insured* for a health insurance issuer liability or for payment of any amount in excess of the contracted reimbursement rate for such services. *In the event of such an action, the prevailing party shall be entitled to recover all costs incurred, including*

---

[8] We find no merit to Ochsner's contention that a private right of action would frustrate the "safe harbor" provision of La. R.S. 22:1877(A)(4). This provision allows violators an opportunity to correct their misconduct and, thereby, avoid the harsh penalties of the Unfair Trade Practices and Consumer Protection Law. This conclusion makes logical sense in light of the underlying reasoning behind the administrative enforcement scheme: to stop the illegal billing. This legislative goal is more likely to be fostered if health care providers in violation are afforded the incentive and opportunity to avoid extreme penalties. Thus, we find no conflict in the concurrent existence of both remedies.

*reasonable attorney fees and court costs.* However, nothing in this Subsection shall be construed to prohibit a contracted health care provider from maintaining any action at law against an enrollee or insured after a health insurance issuer determines that the health insurance issuer is not liable for the health care services rendered.

(Emphasis added).

Anderson argues the lien asserted by Ochsner constitutes "an action at law," entitling her to a private right of action. Conversely, Ochsner asserts a lien is not "an action at law" but a mere privilege or placeholder to preserve a party's rights. For the reasons that follow, we agree with Anderson.[9]

La. R.S. 9:4752 allows for a "medical lien" in favor of health care providers who provide services to an "injured person." This statute authorizes the health care providers to recover "reasonable charges or fees" from third party tortfeasors.[10] Specifically, the statute provides:

A health care provider, hospital, or ambulance service that furnishes services or supplies to any injured person shall have a privilege for the reasonable charges or fees of such health care provider, hospital, or ambulance service on the net amount payable to the injured person, his heirs, or legal representatives, out of the total amount of any recovery or sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries, and on the net amount payable by any insurance company under any contract providing for indemnity or compensation to the injured person. The privilege of an attorney shall have precedence over the privilege created under this Section.

La. R.S. 9:4753(A) instructs that the lien becomes effective "if, prior to the payment of insurance proceeds, or to the payment of any judgment, settlement, or compromise on account of injuries, a written notice . . . is delivered by certified mail, return receipt requested, or by facsimile transmission with proof of receipt of

---

[9] "Maintaining an action at law" is not defined by statute, code, or jurisprudence.

[10] The Balance Billing Act was enacted after the Medical Lien Statute; because we are not considering the merits of the case, the interplay between the two statutes is not presently before us.

transmission by the interested health care provider . . . to the "injured person . . . ."

La. R.S. 9:4754 makes anyone who interferes with the privilege liable for the amount

of the privilege:

> Any person who, having received notice in accordance with the provisions hereof, pays over any monies subject to the privilege created herein, to any injured person, or to the attorney, heirs, or legal representatives of any injured person, shall be liable to the licensed health care provider, hospital, or ambulance service having such privilege for the amount thereof, not to exceed the net amount paid.

Based on the foregoing statutes, we find a lien in this context operates

automatically as a matter of law. Legal consequences attach when the lien is

ignored.[11] La. R.S. 9:4754. Accordingly, Ochsner's act of sending a lien letter to

Anderson's attorney constitutes "maintaining an action at law." Having found an

action at law exists, we turn to the language that grants a right to sue: "In the event

of such an action, the prevailing party shall be entitled to recover all costs incurred,

including reasonable attorney fees and court costs." La. R. S. 22: 1874(B). The

explicit right to recover "all costs incurred" inclusive of attorney fees and court costs

is a clear recognition that a private cause of action is available. Thus, we find

Anderson is expressly given a private right of action under these facts by virtue of La.

R.S. 22:1874(B). Having found an express right of action affording Anderson an

avenue for recourse, we purposefully extend our holding to find an implied right of

action as well. In so doing, we are cognizant that offenders may interpret a limited

holding to mean that other methods of demanding payment from insured patients are

allowed under the Balance Billing Act. We intentionally address and forego that

possibility.

---

[11] To this point, Anderson proffered evidence that her underlying tort claim has settled and, pursuant to La. R.S. 9:4754, her attorney is holding the money subject to the lien in escrow in his trust account and is unable to disburse said money to Anderson without facing personal liability for the amount.

11

**CONCLUSION**

In conclusion, we find an implied private right of action exists under La. R.S. 22:1871, *et seq.* based on (1) the legislature's failure to expressly prohibit an individual remedy; (2) the legislative intent to protect consumers; and (3) the constitutional right of access to the courts in order to seek personal relief. Furthermore, we find an express private right of action exists under La. R.S. 22:1874(B) because Ocshner's act of asserting a lien amounts to "maintaining an action at law," which triggers the availability of a private suit. Accordingly, we affirm the lower courts' denial of summary judgment and remand for proceedings consistent with this opinion.

**AFFIRMED AND REMANDED.**

# SUPREME COURT OF LOUISIANA

## NO. 2013-CC-2970

### *YANA ANDERSON*

### *VERSUS*

### *OCHSNER HEALTH SYSTEM AND OCHSNER CLINIC FOUNDATION*

### ON SUPERVISORY WRITS TO THE TWENTY-FOURTH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

J. VICTORY dissents for the reasons assigned by J. Guidry.

SUPREME COURT OF LOUISIANA

No. 2013-CC-2970

YANA ANDERSON

VERSUS

OCHSNER HEALTH SYSTEM AND OCHSNER CLINIC FOUNDATION

**GUIDRY, Justice, dissents and assigns reasons.**

I respectfully dissent from the majority's holding that the legislature intended, albeit implicitly, to allow a private right of action under the Health Care and Consumer Billing and Disclosure Protection Act, La. Rev. Stat. 22:1871 *et seq.* (more commonly referred to as the "Balance Billing Act"). In my view, the majority inordinately focuses on what the legislature did not do, that is expressly disallow a private right of action, rather than on what the legislature actually did. There is no doubt that the legislature perceived a problem with improper billing practices and sought to prohibit health care providers from collecting or attempting to collect from an insured patient any amount either owed by the health insurer or in excess of the contracted reimbursement rate. La. Rev. Stat. 22:1874(A)(1). Consequently, the legislature outlawed such practices and then expressly provided two types of remedies for enforcing that prohibition.

First, if the insured receives a bill or statement in contravention of La. Rev. Stat. 22:1874(A), the insured may file a complaint with the Consumer Protection Division of the Department of Justice. La. Rev. Stat. 22:1877(A)(1). If the attorney general concludes that a health care provider has attempted to collect or has collected any amount from the insured that is the liability of the health insurer

1

or that is in excess of the contracted reimbursement rate, "**the attorney general** may pursue remedies as provided for in R.S. 51:1401 *et seq.*, beginning with a notice of unfair trade practices." La. Rev. Stat. 22:1877(A)(3) (emphasis supplied). The legislature thus specifically provided that *the attorney general* may pursue such remedies under La. Rev. Stat. 51:1401 *et seq.*, otherwise known as the Louisiana Unfair Trade Practices Act (hereinafter "LUTPA") when the insured files a complaint asserting improper billing practices. Therefore, when an insured is presented with a bill, or in this case a medical lien, the insured's course of action under the Balance Billing Act is to file a complaint with the Consumer Protection Division, which is then charged with pursuing remedies against the health care provider under LUTPA, which may include treble damages, civil penalties, and attorney fees. This court ostensibly expanded the private right of action under LUTPA beyond direct consumers and business competitors to "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal,…" *see Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 09-1633, pp. 6-7 (La. 4/23/10), 35 So.3d 1053, 1057 (relying on La. Rev. Stat. 51:1409(A)), a holding to which I did not subscribe.[1] However, under the Balance Billing Act, the legislature has unambiguously assigned to the attorney general alone the obligation to pursue LUTPA remedies in La. Rev. Stat. 22:1877(A)(3). Accordingly, the majority, in my view, strains to find that the Balance Billing Act, simply by referencing LUTPA, broadly embraces the protections and remedies therein, including those who may pursue them as set forth in La. Rev. Stat. 51:1409(A).

---

[1] *Cheramie Services, Inc.*, 09-1633, 35 So.3d at 1065 (Guidry, J., concurring in the result).

In *Monier v. St. Charles Parish*, 10-526 (La. App. 5 Cir. 5/10/11), 65 So.3d 731, the court declined to find a private right of action under the Teacher Bill of Rights Act, because the act provided for no remedy to anyone. *A fortiori*, where the legislature prohibits certain conduct and then provides the remedy or remedies for a violation of that prohibition, remedies that do not include a private right of action, the better view is that the legislature has intentionally circumscribed such a remedy. As the *Monier* court noted, had the legislature intended for there to be a private right of action, it could have provided for one. 65 So.3d at 733 (citing *Voltolina v. St. Tammany Fire Dist.*, 06-1498 (La. App. 1 Cir. 9/19/07), 970 So.2d 1015).

Second, if "the contracted health care provider [] maintain[s] any action at law against an enrollee or insured for a health insurance issuer liability or for payment of any amount in excess of the contracted reimbursement rate, "**the prevailing party** shall be entitled to recover all costs incurred, including reasonable attorney fees and court costs." La. Rev. Stat. 22:1874(B). I disagree with the majority's conclusion that the medical lien filed by the health care provider entitled the insured to file suit under the Balance Billing Act, and to obtain the remedies set forth in LUTPA, on the basis that the medical lien is an "action at law." As the majority notes, the legislature did not define an "action at law," but when the statute speaks of "the prevailing party," it indicates the health care provider has brought suit against the insured to obtain payment. In light of the specific prohibitions in the Balance Billing Act, I do not read the medical lien statutes as providing the health care provider with any greater rights to recover "reasonable charges or fees" from third-party tortfeasors. Indeed, the legislature in the Balance Billing Act has effectively determined that "reasonable charges or fees," when sought by a contracted health care provider for medical services

provided to an insured, may not exceed the contracted reimbursement rate for such services. Accordingly, the medical lien entitles the contracted health care provider to no more than its contracted reimbursement rate, and should be treated thusly. If the health care provider seeks to enforce the lien for any greater amount, in violation of the Balance Billing Act, the insured may defend herself against such a suit, and is entitled to attorney fees and costs if she prevails. The medical lien alone, in my view, does not create in favor of the insured a private right of action, allowing LUTPA-style damages, against the health care provider. The majority goes astray in granting the insured more rights against the health care provider than were designated by the legislature in the Balance Billing Act itself.

In sum, I believe the Balance Billing Act clearly sets forth the exclusive remedies for a violation thereof, and I see no basis in our law or jurisprudence for creating the additional remedy of a private right of action where the legislature otherwise provided. Accordingly, I respectfully dissent.