WHIPPLE, C.J.
In this appeal involving alleged violations of the Health Care Consumer Billing and Disclosure Protection Act, LSA-R.S. 22:1871 et seq. (hereinafter referred to as "the Balance Billing Act"), plaintiff challenges the trial court's judgment that granted the defendant hospital's motion for summary judgment and dismissed plaintiff's claims against it. For the following reasons, we reverse and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
On May 29, 2014, Victoria Leet was injured in an automobile accident and received treatment at Hospital Service District No. 1 of East Baton Rouge Parish, Louisiana d/b/a Lane Regional Medical Center (referred to herein as "Lane Regional"). At the time of the accident, Leet was insured under the comprehensive medical benefit plan of her husband's employer, Louisiana Machinery Company, LLC. Through a contract between Louisiana Machinery and Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("Blue Cross"), Louisiana Machinery's self-funded *585 plan was administered by Blue Cross, and Louisiana Machinery purchased access to the Blue Cross contracted healthcare provider network, which allows its insureds to seek treatment from network providers at the contracted reimbursement rate. Thus, as a covered beneficiary of a plan participant, Leet was able to obtain treatment from specific providers within the Blue Cross preferred provider network for a reduced rate, with her only responsibility being the applicable copay, deductible, or coinsurance. Lane Regional is a contracted health care provider with Blue Cross. Pursuant to its provider agreement with Blue Cross, Lane Regional contractually agreed to accept these reduced rates as payment in full for services provided to Blue Cross insureds.
At the time of treatment, Leet presented her Blue Cross insurance card to Lane Regional. However, on June 24, 2014, prior to submitting a claim for its services to Blue Cross, Lane Regional, through its accounts receivable contractor, asserted a lien, by sending medical lien letters to Leet and her attorney, for the full, undiscounted amount of $ 8,789.35 against any tort recovery Leet may receive from a third party as a result of the automobile accident. By check dated August 21, 2014, USAgencies Casualty Insurance Company ("USAgencies"), the third-party automobile liability insurer, issued a payment to Lane Regional for $ 8,789.35, the full amount of the lien.
Meanwhile, on July 15, 2014, several weeks after asserting the lien, Lane Regional filed an insurance claim with Blue Cross, seeking reimbursement for the services provided to Leet. Thereafter, on September 16, 2014, after initially "pend/denying" the claim while awaiting additional information, Blue Cross paid Lane Regional for the claim at the reduced, contracted reimbursement rate of $ 1,477.74. Despite efforts by Leet's attorney to have Lane Regional reimburse Leet the full amount of any payment over the reduced, contracted rate for the services provided, Lane Regional retained the full, undiscounted payment from USAgencies. With regard to the payment of the reduced, contracted rate from Blue Cross, Lane Regional, after first attempting to return the $ 1,477.74 payment to Blue Cross, issued a refund to Leet on December 1, 2014, in the amount of $ 1,477.74, as reimbursement of the overpayment on her account.
Thereafter, on December 10, 2014, Leet filed a petition styled "Class Action Petition for Payment of a Thing Not Due, for Damages, for Declaratory Relief, and for Injunctive Relief" in the Twentieth Judicial District Court. Through original and amending petitions, Leet named as defendants Lane Regional; Alegis Revenue Group, LLC,[1] Lane Regional's accounts receivable contractor; and Blue Cross.
Regarding the claims against Lane Regional, Leet, individually and on behalf of the class, alleged that Lane Regional, in filing a lien and collecting the full, undiscounted rate for services provided to Leet, violated LSA-R.S. 22:1874 of the Balance Billing Act and that, as a result of these allegedly illegal billing practices by Lane Regional, she and those similarly situated were entitled to repayment of all overpayments, damages for mental anguish and emotional distress, loss of profits or use, out-of-pocket expenses, and all other damages allowed by law, as well as attorney's fees, costs, and expenses. Leet, individually and on behalf of all others similarly situated, also sought declaratory judgment, declaring that the practices of Lane *586 Regional were in violation of law and in breach of contract and that all actions at law asserted by Lane Regional be deemed unenforceable and cancelled, and preliminary and permanent injunctive relief, enjoining Lane Regional from refusing to accept a patient's health insurance when a patient has been involved in a liability accident and from maintaining actions at law in violation of LSA-R.S. 22:1874.
Subsequently, on December 15, 2014, five days after Leet filed suit, but before service was perfected on Lane Regional, Lane Regional issued a second payment to Leet in the amount of $ 7,211.61, representing the remaining sums it had retained over the contractually reduced reimbursement rate less Leet's $ 100.00 copayment.
After transfer of the suit from the Twentieth Judicial District Court to the Nineteenth Judicial District Court, removal of the suit to federal court, and a remand back to the state district court, Lane Regional filed a motion for summary judgment on February 23, 2018, contending that it was entitled to judgment in its favor as a matter of law, dismissing plaintiff's claims against it. Specifically, Lane Regional contended that: (1) as a public entity, it was entitled to immunity pursuant to LSA-R.S. 9:2798.1 ; (2) it did not violate the Balance Billing Act, nor was plaintiff entitled to general damages for its alleged violation of the Act; (3) plaintiff's claims were moot because she received full redress from Lane Regional; and (4) Lane Regional did not breach any "contract" or "quasi-contract" for which plaintiff would have a claim against it, nor did plaintiff sustain any compensable damages for any alleged breach.
Following a hearing on the motion, the trial court found that Leet's claims were moot because Lane Regional had reimbursed her "all amounts that could conceivably be due to her" and, thus, pretermitted ruling on Lane Regional's remaining arguments in support of its motion. Because Leet was the only identified class representative, the trial court, by judgment dated April 18, 2018, granted Lane Regional's motion for summary judgment and dismissed Leet's claims against it with prejudice. From this judgment, Leet appeals.
SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jones v. Anderson, 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So.3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.[2] LSA-C.C.P. art. 966(A)(4).
The burden of proof rests on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual *587 support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1).
Appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Crosstex Energy Services, LP v. Texas Brine Company, LLC, 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So.3d 932, 936, writ denied, 2018-0145 (La. 3/23/18), 238 So.3d 963. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Crosstex Energy Services, LP, 240 So.3d at 936. Because it is the applicable substantive law that determines materiality, whether a particular issue in dispute is material can be seen only in light of the substantive law applicable to the case. Jones, 224 So.3d at 417.
DISCUSSION
The Balance Billing Act prohibits a health care provider from collecting or attempting to collect amounts from an insured patient in excess of the contracted reimbursement rate, a practice referred to as "balance billing." See Emigh v. West Calcasieu Cameron Hospital, 2013-2985 (La. 7/1/14), 145 So.3d 369, 371. Specifically, LSA-R.S. 22:1874 provides, in pertinent part, as follows:
A. (1) A contracted health care provider shall be prohibited from discount billing, dual billing, attempting to collect from, or collecting from an enrollee or insured a health insurance issuer liability or any amount in excess of the contracted reimbursement rate for covered health care services.
(2) No contracted health care provider shall bill, attempt to collect from, or collect from an enrollee or insured any amounts other than those representing coinsurance, copayments, deductibles, noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable.
(3) However, in the event that any billing, attempt to collect from, or the collection from an enrollee or insured of any amount other than those representing copayment, deductible, coinsurance, payment for noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer as the liability of the enrollee or insured is based on information received from a health insurance issuer, the contracted health care provider shall not be in violation of this Subsection.
* * *
B. No contracted health care provider may maintain any action at law against an enrollee or insured for a health insurance issuer liability or for payment of any amount in excess of the contracted reimbursement rate for such services. In the event of such an action, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney fees and court costs. However, nothing in this Subsection shall be construed to prohibit a contracted health care provider from maintaining any action at law against an enrollee or insured after a health insurance issuer determines that the health insurance issuer is not liable for the health care services rendered.
*588 (Emphasis added). An insured has an implied right of action under the Balance Billing Act grounded in individual restitution where a health care provider collects or attempts to collect amounts from the insured patient in excess of the contracted reimbursement rate. Anderson v. Ochsner Health System, 2013-2970 (La. 7/1/14), 172 So.3d 579, 583-585. Moreover, where a health care provider asserts a lien pursuant to LSA-R.S. 9:47 52[3] for the full amount of undiscounted charges, that practice constitutes "an action at law" prohibited by LSA-R.S. 22:1874(B), thus entitling the insured injured person to a private right of action under the express language of LSA-R.S. 22:1874(B). Anderson, 172 So.3d at 585.
On appeal, Leet contends that the trial court erred in granting Lane Regional's motion for summary judgment because genuine issues of material fact remain, including issues as to damages and the right to collect costs and attorney's fees for Lane Regional's actions in maintaining an action at law in violation of LSA-R.S. 22:1874. Noting that at the time suit was filed, Lane Regional was retaining funds owed to her that it had collected by "balance billing" through the use of a medical lien, Leet argues that a contracted health care provider cannot "balance bill" an insured patient in violation of the Balance Billing Act and then avoid damages, costs, and attorney's fees by reimbursing the patient the amount of the overpayment after a lawsuit is filed. She further contends that there are genuine issues of material fact as to how being denied access to her money damaged her.
Additionally, Leet notes that in her petition, she also sought both declaratory and injunctive relief, declaring Lane Regional's actions to be in violation of law and enjoining the continuation of this wrongful billing practice. Accordingly, she asserts that Lane Regional's reimbursement to Leet of overpayments on her account does not render these requests for relief moot. Thus, Leet argues that the trial court erred in granting summary judgment.
Contrariwise, Lane Regional contends that general damages are not permitted under the Balance Billing Act and that Leet is not entitled to attorney's fees and costs because under the Act, a "prevailing party" is only entitled to recover attorney's fees and costs incurred in defending against an "action at law" maintained by the health care provider. Additionally, Lane Regional avers that Leet's requests for injunctive and declaratory relief, which it acknowledges were not presented to or addressed by the trial court, became moot when her claim for damages was dismissed, as well as by the fact that Lane Regional voluntarily ceased the complained-of behavior. We disagree.
At the outset, we reject Lane Regional's contention that an award of general damages is not permitted by the Balance Billing Act. In Anderson, the Louisiana Supreme Court, in holding that an insured has an implied right of action, reasoned that nothing in the Balance Billing Act expressly prohibits such a private right of action. Anderson, 172 So.3d at 583. Noting that the legislative purpose and spirit of the law is the protection of the consumer, the Court further concluded that the legislative intent supported the existence of a private right of action to sue under LSA-R.S. 22:1877.[4] Importantly, in concluding *589 that nothing in the Balance Billing Act *590 "strips an aggrieved insured of his/her right to recover ... or prevent[s] him/her from being made whole" (emphasis added), the Supreme Court cited both LSA-Const. art. I, § 22 ("every person shall have an adequate remedy by due process of law ... for injury to him in his person, property, reputation, or other rights") and LSA-C.C. art. 2315(A) ("[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"). Thus, the Court found that an insured has an implied right of action grounded in individual restitution.[5] Anderson, 172 So.3d at 584-585.
Notably, in specifically relying, in part, on LSA-C.C. art. 2315(A), and quoting its language that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it" (emphasis added), the Supreme Court did not limit the types of damages recoverable to merely attorney's fees and costs, as suggested by Lane Regional's interpretation of the Balance Billing Act. Indeed, the Court's reliance on LSA-C.C. art. 2315 in Anderson, in our view, negates Lane Regional's argument that an award of general damages is not permitted by the Balance Billing Act.
Accordingly, we conclude that the mere fact that a health care provider finally tenders to the insured (after the filing of suit) sums collected and retained over the contracted reimbursement amount does not necessarily render the insured's claim for damages moot. If there is evidence of other damages caused by the health care provider's actions in violation of the Balance Billing Act, there may remain a viable claim for damages.
In the instant case, disputed questions of fact exist as to the damages Leet suffered as a result of Lane Regional's failure to return funds belonging to her for a period of months. Leet argues that Lane Regional not only attempted to collect through an action at law, it actually collected and improperly retained funds belonging to her for a period of several months. Leet testified that Lane Regional's failure to reimburse the overpayment to her when received resulted in her incurring additional financial expense. Specifically, she testified that prior to the accident in question, she had gotten behind on her mortgage payments. When she became aware that she would be receiving a sum of approximately $ 8,000.00 in payment of her medical expenses in relation to the accident, Leet informed her mortgage company that she would make a lump sum payment in that amount. However, according to Leet, when Lane Regional then refunded her only a fraction of that amount, her mortgage company thought she had been lying and instituted foreclosure proceedings. Although she was still living in the same home at the time of her deposition testimony and the same mortgage company still held the mortgage, Leet testified that the delay in Lane Regional forwarding her the full sum to which she was entitled caused her to incur additional expenses with her mortgage company.
Additionally, we note that a summary judgment "may be rendered or affirmed only as to those issues set forth in *591 the motion under consideration by the court at that time." LSA-C.C.P. art. 966(F). See also McGrew v. Waguespack, 2014-0251 (La. App. 1st Cir. 12/30/14), 168 So.3d 690, 695. Further, "[a] court cannot render ... summary judgment dismissing a claim that has not been challenged by the pleading." Cason v. Saniford, 2013-1825 (La. App. 1st Cir. 6/6/14), 148 So.3d 8, 14, writ denied, 2014-1431 (La. 10/24/14), 151 So.3d 602.
As acknowledged by Lane Regional in its brief filed with this court, it did not raise the issues of Leet's claims for declaratory or injunctive relief in its motion for summary judgment, and these issues were not raised at the hearing or considered by the trial court in its oral ruling on the motion. Thus, the trial court erred in dismissing Leet's claims for declaratory judgment and injunctive relief.
Accordingly, because genuine issues of material fact remain as to Leet's damages claim under the Balance Billing Act and because her claims for declaratory and injunctive relief were not placed before the trial court in Lane Regional's motion for summary judgment, the trial court's judgment granting Lane Regional's motion for summary judgment was wrongful and must be reversed.[6]
CONCLUSION
For the above and foregoing reasons, the April 18, 2018 judgment, granting Lane Regional's motion for summary judgment and dismissing Leet's claims against it, is hereby reversed. This matter is remanded for further proceedings consistent with the views expressed herein. Costs of this appeal in the amount of $ 3,139.50 are assessed against the Hospital Service District No. 1 of East Baton Rouge Parish, Louisiana d/b/a Lane Regional Medical Center.
REVERSED AND REMANDED.
McClendon, J. concurs for reasons assigned.

Alegis Revenue Group, LLC was at times improperly referred to as "Alegis Revenue Solutions, LLC" and "Alegis Corporation" in the petitions.

However, the court shall consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made. LSA-C.C.P. art. 966(D)(2).

Louisiana Revised Statute 9:4752 grants a health care provider a privilege for the health care provider's "reasonable charges or fees" against an injured person's recovery from another for those injuries.

Louisiana Revised Statute 22:1877 provides as follows:
A. (1) Any enrollee or insured who receives a bill or consolidated activity statement and bill from a contracted health care provider in violation of R.S. 22:1874(A), or a health insurance issuer acting on behalf of an enrollee or insured, may file a complaint with the Consumer Protection Division of the Department of Justice.
(2) The enrollee or insured, or health insurance issuer acting on behalf of the enrollee or insured, shall provide to the attorney general a copy of the original bill or consolidated activity statement and bill issued pursuant to R.S. 22:1873 and such additional information that may be requested by the attorney general, documenting an attempt by a contracted health care provider to collect or the collection of any amount from the enrollee or insured that is the liability of the health insurance issuer or that is in excess of the contracted reimbursement rate. In the event it is determined that billing activity was based on information received from the health insurance issuer, the contracted health care provider shall not be in violation, and the attorney general shall refer the violation to the commissioner.
(3) If the attorney general concludes, based on the information submitted, that a contracted health care provider has attempted to collect, or collected, any amount from the enrollee or insured that is the liability of the health insurance issuer or that is in excess of the contracted reimbursement rate, the attorney general may pursue remedies as provided for in R.S. 51:1401 et seq., beginning with a notice of unfair trade practices.
(4) Any contracted health care provider who has demanded or received payment from an enrollee or insured for any amount which he is prohibited from billing or collecting by R.S. 22:1874(A) shall correct his billing and refund any such amount paid within forty-five days of service of the notice of unfair trade practices.
(5) The notice of unfair trade practices shall be satisfied by the attorney general within thirty days of receipt of information from the contracted health care provider that shows that any such billing or collection efforts were not in violation of R.S. 22:1874(A).
(6) In the event that a contracted health care provider fails to comply with a notice of unfair trade practices, the attorney general may proceed in accordance with the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401 et seq.
B. (1) Any enrollee or insured or contracted health care provider or noncontracted facility-based physicians providing services in a base health care facility who identifies that a health insurance issuer is in violation of R.S. 22:1871 through 1876 shall be entitled to request a cease and desist order from the commissioner of insurance as provided in this Subsection.
(2) The enrollee, insured, contracted health care provider, or noncontracted facility-based physicians providing services in a base health care facility shall provide to the commissioner documentation of such violation.
(3) If the commissioner concludes, based on the information submitted, that a health insurance issuer has violated this Section, the commissioner shall, within sixty days of receipt of such information, issue to such health insurance issuer a written order directing the health insurance issuer to cease and desist such violation.
(4) Any health insurance issuer shall correct such violation within forty-five days of service of the cease and desist order issued by the commissioner.
(5) The cease and desist order shall be rescinded by the commissioner within ten days of receipt of information from the health insurance issuer that it was not in violation.
(6) In the event that a health insurance issuer fails to comply with the cease and desist order issued by the commissioner, the commissioner may subsequently subject the health insurance issuer to a fine of fifty percent of any amount in violation of R.S. 22:1875 up to a maximum fine of one thousand dollars per claim, or for such violations not related to a reimbursement amount, a fine of one thousand dollars per violation.
C. The commissioner shall not be authorized to issue a cease and desist order or to levy a fine against the Office of Group Benefits. If the commissioner concludes, based on the information submitted, that the Office of Group Benefits has violated this Section, the commissioner shall, within sixty days of receipt of such information, notify the commissioner of administration in writing.

Additionally, in holding that LSA-R.S. 22:1874(B) of the Balance Billing Act expressly grants an insured a right of action as well for the recovery of all costs incurred, including attorney's fees and court costs, where a contracted health care provider has maintained an "action at law" against an insured for payments in excess of the contracted reimbursement rate, the Court reasoned that the explicit right to recover "all costs incurred" is "a clear recognition that a private right of action is available." Anderson, 172 So.3d at 585-586.

While Lane Regional did raise other arguments in support of its motion for summary judgment in the trial court below, the trial court specifically pretermitted consideration of those arguments. Moreover, Lane Regional gave only cursory mention to those arguments in its appellate brief without fully briefing those arguments. Accordingly, we decline to address these alternate arguments as well. See Dan-Cin Construction Company, Inc. v. Thrasher, 2008-1552 (La. App. 1st Cir. 2/13/09), 9 So.3d 205, 208 (as a general rule, appellate courts will not consider issues that were not addressed by the trial court).