50,849 (La.App. 2 Cir. 8/10/16)

**Irma RABUN, Individually and on Behalf of all others Similarly Situated, Plaintiff–Appellant**

**v.**

**ST. FRANCIS MEDICAL CENTER, INC., Defendant–Appellee.**

**No. 50,849–CA.**

Court of Appeal of Louisiana, Second Circuit.

Aug. 10, 2016.

On Rehearing Nov. 23, 2016.

Hoffoss Devall, LLC, by J. Lee Hoffoss, Jr., Claude P. Devall, Jr., Donald Wayne McKnight, Bobby Lynn Holmes, Kevin David Alexander, Martzell & Bickford by

Scott R. Bickford, Lawrence J. Centola, III, The Laborde Law Firm by Derrick G. Earles, Law Offices of Kirby D. Kelly by Kirby Dale Kelly, Harold Dean Lucius, Jr., for Appellant.

Breazeale, Sachse & Wilson, LLP, by David Robert Kelly, Thomas Richard Temple, Jr., Christopher David Billings, Joseph J. Cefalu, III, for Appellee.

Before WILLIAMS, LOLLEY, and STONE, JJ.

STONE, J.

The plaintiff, Irma Rabun, individually and on behalf of all others similarly situated, appeals the ruling of the trial court granting summary judgment in favor of St. Francis Medical Center and dismissing plaintiff's claims. For the following reasons, we reverse and remand.

## FACTUAL BACKGROUND / PROCEDURAL HISTORY

On February 1, 2013, Irma Rabun ("Rabun") was injured in a motor vehicle accident caused by a third party. She sought medical attention at St. Francis Medical Center, Inc. ("St. Francis"), on the same day. At Rabun's request, her sister, Sylvia Rivers, signed a number of medical forms on Rabun's behalf.[1] One of the signed forms contained the following language:

I consent and agree to allow St. Francis Medical Center to pursue first party (medical payments insurance) and/or third party liability insurance to satisfy my obligation for medical expenses incurred caused by the accident.

At all times pertinent to this matter Rabun maintained a health insurance policy with United Healthcare Insurance Company ("United"). Pursuant to her insurance contract, Rabun paid premiums to United in exchange for discounted health care rates. These reduced rates were available pursuant to a member provider agreement, wherein United contracted with St. Francis to secure discounted charges for insureds, more commonly known as contracted reimbursement rates ("contracted rate").[2] Therefore, at the time of Rabun's treatment, St. Francis was a "contracted heath care provider" with United, as defined in La. R.S. 22:1872(6).[3]

Instead of submitting a claim to United for Rabun's medical services, St. Francis opted to attach a medical provider's lien against any settlement proceeds Rabun received for the underlying motor vehicle accident. The lien was for $9,452.00, the full amount of undiscounted charges for the medical services rendered to Rabun. After St. Francis ascertained Rabun was being represented by an attorney in the resulting personal injury suit, St. Francis provided Rabun's attorney with a copy of the lien. Rabun's attorney subsequently requested that St. Francis file a claim with

---

1. It is undisputed that Irma Rabun authorized Sylvia Rivers to sign on her behalf pursuant to the mandate laws.

2. La. R.S. 22:1872 defines "contracted reimbursement rate" as the aggregate maximum amount that a contracted health care provider has agreed to accept from all sources for provision of covered health care services under the health insurance coverage applicable to the enrollee or insured.

3. La. R.S. 22:1872(6) defines a "contracted health care provider" as a health care provider that has entered into a contract or agreement *directly* with a health insurance issuer or with a health insurance issuer through a network of providers for the provision of covered health care services.

United to recover payment of the medical bill. St. Francis made the claim with United; however, the claim was denied as being untimely.[4]

On May 9, 2014, Rabun filed a class action petition for damages, breach of contract, declaratory relief, and for injunctive relief, against St. Francis. In the petition Rabun claimed St. Francis was required to submit all claims for medical bills to United for the contracted rate. According to Rabun, St. Francis' decision to attach a lien against Rabun's personal injury proceeds was an attempt to collect more money from Rabun in violation of the Health Care Consumer Billing Disclosure Protection Act ("the Balance Billing Act" or "BBA"). Thereafter, St. Francis filed a motion for summary judgment seeking dismissal of Rabun's claims.

|3At the hearing on the matter, the trial court ruled in favor of St. Francis and gave the following reasons for judgment:

> In the instant case Ms. Irma Rabun versus St. Francis Medical Center, the plaintiff gave consent by mandate through her sister for St. Francis to bill either her insurance company or a third party. This is in this court's view an offensive and unsettling practice, but it is in this court's view also an authorized procedure under law. I cannot find any legal basis under the present facts and circumstances to deny St. Francis' Motion for Summary Judgment. Therefore, finding no genuine issue of material fact, the court grants St. Francis Motion

for Summary Judgment and these are my legal reasons for judgment.[5]

Rabun subsequently filed this appeal.

## APPLICABLE LAW / DISCUSSION

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for trial. *Schultz v. Guoth*, 2010–0343 (La.01/19/11), 57 So.3d 1002, and citations therein. The motion shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Smitko v. Gulf S. Shrimp, Inc.*, 11–2566 (La.07/02/12), 94 So.3d 750; *Monroe Surgical Hosp., LLC v. St. Francis Medical, Inc.*, 49,600 (La.App.2d Cir.08/21/14), 147 So.3d 1234, *writ denied*, 14–1991 (La.11/21/14), 160 So.3d 975; *Garcia v. Lewis*, 50,744 (La.App. 2 Cir. 06/22/16), 197 So.3d 738.

|4A material fact is one whose existence or nonexistence may be essential to the plaintiff's action under the applicable theory of recovery. Such facts potentially ensure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the dispute. *Henderson v. Union Pac. R.R.*, 41,596 (La.App.2d Cir.11/15/06), 942 So.2d 1259. Simply put, a "material" fact is one that would matter

---

4. To date, St. Francis has not collected any funds as compensation for Rabun's medical services and the lien is still active.

5. In its motion for summary judgment, St. Francis also alleged summary judgment was proper on other grounds, namely: 1) Rabun's claims had prescribed; 2) Rabun was not

entitled to any general damages as the result of any alleged violation of the BBA; and 3) Rabun cannot prove that she suffered any compensable damages due to an alleged breach of contract. The trial court did not address any of the above-mentioned issues.

at the trial on the merits and any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. *Sassone v. Elder*, 626 So.2d 345, 352 (La.1993); *Industrial Sand & Abrasives, Inc. v. Louisville & Nashville R.R. Co.*, 427 So.2d 1152, 1153–54 (La.1983) (collecting cases); *McCoy v. Physicians & Surgeons Hosp., Inc.*, 452 So.2d 308 (La.App. 2d Cir.1984), *writ denied*, 457 So.2d 1194 (La.1984) (noting that "[s]ummary judgment may not be used as a substitute for trial"). A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Hines v. Garrett*, 2004–0806 (La.06/25/04), 876 So.2d 764, citing, *Smith v. Our Lady of the Lake Hosp., Inc.*, 93–2512, (La.07/05/94), 639 So.2d 730, 751.

La. R.S. 22:1871, et seq., outlines the Balance Billing Act. Specifically, La. R.S. 22:1874, in pertinent part, prohibits a health care provider from collecting or attempting to collect amounts from an insured patient in excess of the contracted reimbursement rate:

A. (1) A contracted health care provider shall be prohibited from discount billing, dual billing, attempting to collect from, or collecting from an enrollee or insured a health insurance issuer liability or any amount in excess of the contracted reimbursement rate for covered health care services.

(2) No contracted health care provider shall bill, attempt to collect from, or collect from an enrollee or insured any amounts other than those representing coinsurance, copayments, deductibles, noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable.

(3) However, in the event that any billing, attempt to collect from, or the collection from an enrollee or insured of any amount other than those representing copayment, deductible, coinsurance, payment for noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer as the liability of the enrollee or insured is based on information received from a health insurance issuer, the contracted health care provider shall not be in violation of this Subsection.

La.R.S. 9:4752 defines the medical lien privilege, in pertinent part, as follows:

A ... hospital ... that furnishes services ... to any injured person shall have a privilege for the reasonable charges or fees of such ... hospital ... on the net amount payable to the injured person, his heirs, or legal representatives, out of the total amount of any recovery or sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries ...

Rabun argues St. Francis violated the BBA when it chose to attach a lien against the liable third party for the entire amount of the medical costs instead of filing a claim with United for the contracted rate. Rabun insists St. Francis was obligated to file a claim with United and limit her financial exposure to her deductible, coinsurance, copayment, or any other amount allowed under the terms of the member provider agreement. Rabun claims that by asserting the lien, St. Francis attempted to circumvent the prohibition against balance billing and collect more from Rabun than what she would have been responsible for had the claim been

filed with United. She further contends the prohibition on balance billing cannot be excluded by a waiver or consent and therefore, the trial court erred when it concluded that she consented to being balance billed by signing the medical forms. Rabun[6]argues, even if such consent could be given, the language in the document did not constitute sufficient waiver or consent. Furthermore, there could be no such consent in this particular case because she never intended anyone other than United be assessed her medical costs.

St. Francis claims it was not required to submit the medical expenses to United when the cause of Rabun's treatment was necessitated by a third party. According to St. Francis, not only did it have a statutory right under the medical lien statute to pursue payment from the responsible third party, but it also obtained valid and express consent from Rabun to do so when Rabun signed the medical forms. St. Francis asserts the BBA in no way prohibits or limits a healthcare provider's statutory right to attach a lien to a suit against a liable third party in an attempt to collect a patient's medical expenses. Additionally, St. Francis opposes the notion that the amount of the lien must be limited to the contracted rate provided in the member provider agreement. St. Francis insists the contracted rate is an exclusive and narrow benefit that extends only to the health insurance issuer, or in this case, United. Accordingly, St. Francis argues, it was permitted to assert a lien for the full, undiscounted amount of Rabun's medical expenses and doing so did not violate the BBA.

On *de novo* review, we find St. Francis had both a statutory right under the medical lien statute and express consent from Rabun to seek payment for Rabun's medical treatment through the attachment of a medical lien. We find, however, that Rabun did not and could not consent to being billed for an amount in excess of her contracted rate. For this reason and for reasons more thoroughly explained below, this court finds there to be a genuine issue of material fact as to the amount of Rabun's medical costs.

█ [7]The BBA prohibits a medical care provider from directly or indirectly billing an insured for any amount in excess of the contracted rate under its member provider agreement. Both this court and the Louisiana Supreme Court have held that the BBA provides a private right of action for any violations of the statute. The medical lien statute authorizes health care providers to recover reasonable charges or fees from third party tortfeasors. The question before us is how, if at all, the BBA and medical lien statute correlate with one another. Although this particular issue is one of first impression for this court, Justice Guidry in his dissent in *Anderson v. Ochsner Health Sys.*, 2013–2970 (La.07/01/14), 172 So.3d 579, 588,[6] laid the

---

6. In *Anderson v. Ochsner Health System*, the Supreme Court of Louisiana examined whether a plaintiff has a private right of action for damages against a health care provider under the BBA. At the time of the plaintiff's accident, she was insured by United Healthcare, a contracted health care provider of Ochsner Health System, where she received treatment. Instead of billing United Healthcare for the plaintiff's medical expenses, Ochsner asserted a medical lien for the full amount of undiscounted charges. A putative class action suit was filed against Ochsner, arguing that Ochsner's billing practices violated the BBA. *Id.* at 580. The Court held that the legislature intended that the BBA provide a private right of action and that an express private right of action exists under La. R.S. 22:1874(B). *Id.* at 586. The Court has also held that a class action is the superior method of adjudicating actions brought pursuant to the BBA. *Baker v. PHC–Minden, L.P.*, 14–2243 (La.5/5/15), 167 So.3d 528, 544.

foundation as to how the two function simultaneously:

> Indeed, the legislature in the Balance Billing Act has effectively determined that "reasonable charges or fees," when sought by a contracted health care provider for medical services provided to an insured, may not exceed the contracted reimbursement rate for such services. Accordingly, the medical lien entitles the contracted health care provider to no more than its contracted reimbursement rate, and should be treated thusly. If the health care provider seeks to enforce the lien for any greater amount, in violation of the Balance Billing Act, the insured may defend herself against such a suit, and is entitled to attorney fees and costs if she prevails.

With this rationale in mind, this Court finds that under the BBA, the amount of a medical lien imposed on a third-party tortfeasor is limited to the healthcare provider's contracted rate with the patient's health insurance issuer.

Considering the BBA prohibits a contracted healthcare provider from billing, or attempting to bill, a patient for an amount greater than the contracted rate, Rabun's medical expenses could not exceed the contracted rate provided in her member provider agreement. As such, any sum over the contracted rate can be deemed as charges Rabun never incurred. The third-party tortfeasor can only be liable for those damages that Rabun actually sustained as a result of the car accident. The tortfeasor cannot be held responsible and is not obligated to compensate for any damages that Rabun never attained. Incidentally, the amount of the medical lien should not have exceeded the costs Rabun actually incurred as a result of the car accident.

The medical lien statute permits the health care provider to collect "reasonable charges or fees"... from "the net amount payable to the injured person". From a practical stance, although the primary source of these charges or fees is the third party tortfeasor, the injured party, namely Rabun, can and should be treated as a secondary source since the amount payable to St. Francis will be deducted from any award Rabun is entitled to from the third party. By alleging that the medical lien statute authorizes it to collect more than the contracted rate from the third party, St. Francis is circuitously stating that it can avoid the strict bans imposed by the BBA by simply crafting its bill as a medical lien instead of as a claim filed with the medical insurance company. Not only does this court reject this notion but we also find this practice to be disingenuous and somewhat deplorable. If such methods were permissible, there would be no need for the BBA. We find that St. Francis, by attaching a medical lien for an amount greater than the contracted rate, attempted to collect directly from the tortfeasor, and indirectly from Rabun, an amount that the BBA specifically prohibits it from collecting. Neither Rabun nor the third-party tortfeasor can be forced to pay an amount that St. Francis is not entitled to, and therefore not owed, under the BBA.

Accordingly, in our view, St. Francis' attempt at circumventing the BBA by imposing a medical lien for an amount that exceeds the contracted rate, lends itself to a dispute as to the amount actually owed to St. Francis, and creates a genuine issue of material fact. Consequently, the grant of summary judgment on this issue was improper. We conclude that the dispute over the amount owed should be considered by the factfinder. As a final note, because the trial court never ruled on the other grounds for which a granting of sum-

mary judgment may be appropriate, we pretermit any discussion on those issues.

### CONCLUSION

For the reasons expressed, the summary judgment is reversed and the matter is remanded for further proceedings with instructions that the trial court make a determination as to whether a grant of summary judgment is appropriate on other grounds. The costs associated with the motion for summary judgment are assessed against St. Francis Medical Center, Inc.

**REVERSED AND REMANDED.**

### ON REHEARING

The rehearing application in this case is granted for the limited purpose of clarifying this Court's opinion as it pertains to the Balance Billing Act in relation to the medical lien statute. Our original opinion in this matter correctly noted the Balance Billing Act prohibits a contracted healthcare provider from billing, or attempting to bill, an injured party for an amount greater than the contracted reimbursement rate, when that injured party has medical insurance. The applicant on rehearing erroneously infers this Court's opinion fundamentally changes the application of the collateral source rule in tort cases.

Pursuant to the collateral source rule, an injured plaintiff's tort recovery may not be reduced as a result of receiving compensation from independent sources. However, the opinion of this Court focuses strictly on what a medical provider, and not a plaintiff, can recover from a tortfeasor. Notably, it does not in any manner whatsoever address the collateral source rule. Notwithstanding, in an effort to clarify our original opinion, we hereby amend part of the discussion as follows:

Considering the BBA prohibits a contracted healthcare provider from billing, or attempting to bill, a patient in excess of the contracted reimbursement rate, Rabun's obligation to St. Francis cannot exceed the contracted rate set forth in the member provider agreement. As such, St. Francis is precluded from recouping or attempting to recoup from Rabun any amount that exceeds the contracted rate. Consequently, St. Francis cannot, in an astute effort to procure what the BBA precisely bans it from procuring, force the third party tortfeasor to pay [St. Francis] the entire amount of Rabun's unreduced medical bill. It would seem plausible and appropriate that Rabun reap the benefits of, and not penalized for, having medical insurance. Rabun, not St. Francis, should recover any residual sums remaining after the contracted rate has been deducted from the unreduced medical bill. Accordingly, St. Francis' right to attach a medical lien to Rabun's tort claim in which Rabun seeks to recover damages from a tortfeasor, is limited to the contracted rate

Furthermore, the line which reads "Neither Rabun nor the third-party tortfeasor can be forced to pay an amount that St. Francis is not entitled to, and therefore not owed, under the BBA", is amended to "Neither Rabun nor the third-party tortfeasor can be forced to pay St. Francis an amount that St. Francis is not entitled to under the BBA."

In all other respects, the opinion of this Court on original hearing remains in full force and effect. The rehearing application is otherwise denied.

**LIMITED REHEARING GRANTED; JUDGMENT AMENDED AND AFFIRMED AS AMENDED.**