# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-369 consolidated with 21-757

**DENNIS GIBSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**

**VERSUS**

**NATIONAL HEALTHCARE OF LEESVILLE, INC., D/B/A BYRD REGIONAL HOSPITAL**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 93,228 B
HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## CANDYCE G. PERRET
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Candyce G. Perret, and Jonathan W. Perry, Judges.

Pickett, Chief Judge, dissents and assigns reasons.

**WRIT DENIED; DENIAL OF MOTION TO DECERTIFY CLASS ACTION AFFIRMED.**

**David R. Kelly**
**Thomas R. Temple, Jr.**
**Chris D. Billings**
**Breazeale, Sachse & Wilson, LLP**
**Post Office Box 3197**
**Baton Rouge, LA 70821**
**(225) 387-4000**
**COUNSEL FOR DEFENDANT-APPLICANT/APPELLANT**
     **National Healthcare of Leesville, Inc. D/B/A Byrd Regional Hospital**

**J. Lee Hoffass, Jr.**
**Claude P. Devall**
**Donald W. McKnight**
**Hoffoss Devall, LLC**
**517 West College Street**
**Lake Charles, LA 70605**
**(337) 433-2053**
**COUNSEL FOR PLAINTIFF-RESPONDENT/APPELLEE**
     **Dennis Gibson**

**Scott R. Bickford**
**Lawrence J. Centola, III**
**Martzell, Bickford & Centola, PC**
**338 Lafayette Street**
**New Orleans, LA 70130**
**(504) 581-9065**
**COUNSEL FOR PLAINTIFF-RESPONDENT/APPELLEE**
     **Dennis Gibson**

**Derrick Earles**
**Laborde Earles Law Firm**
**1901 Kaliste Saloom Road**
**Lafayette, LA 70508**
**(337) 777-7777**
**COUNSEL FOR PLAINTIFF-RESPONDENT/APPELLEE**
     **Dennis Gibson**

**Edwin Dunahoe**
**Jared Dunahoe**
**The Dunahoe Law Firm**
**Post Office Box 607**
**Natchitoches, LA 71458-0607**
**(318) 352-1999**
**COUNSEL FOR PLAINTIFF-RESPONDENT/APPELLEE**
     **Dennis Gibson**

**PERRET, Judge.**

Before the court is a consolidated writ and appeal from a June 17, 2021 Judgment denying National Healthcare of Leesville, Inc. d/b/a Byrd Regional Hospital's ("Byrd") motion for summary judgment and denying its Motion to Decertify Class. This class action lawsuit was filed against Byrd for alleged violations of the Balance Billing Act ("BBA"), specifically La.R.S. 22:1874, breach of contract, declaratory judgment, and injunctive relief. Byrd filed a motion for summary judgment following a recent pronouncement by the Louisiana Supreme Court, asserting that the class representative's claims were prescribed and a motion to decertify the class. The trial court denied both motions. Byrd sought writs of the summary judgment denial and appealed the motion to decertify the class. This court consolidated the actions. Upon review, we affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL HISTORY:**

Dennis Gibson, Plaintiff and Class Representative, was treated at Byrd for injuries he sustained in an automobile accident on April 25, 2011. Mr. Gibson was insured through Blue Cross Blue Shield of Louisiana ("BCBSLA"). At the time, Mr. Gibson signed an Assignment of Insurance Benefits/Promise to Pay ("the Assignment"). The Assignment authorized Byrd to collect benefits, including "all insurance benefits, sick benefits, [and] injury benefits" due because of third party liability available to Mr. Gibson to pay for Byrd's services. Under the Assignment, Mr. Gibson was obligated to pay "any charges not covered by my insurance company" and "to pay [Byrd] in accordance with the regular rates and terms of [Byrd]."

Despite being insured, Byrd labeled Mr. Gibson in a manner to indicate that third-party liability was involved. Under this classification, rather than billing

BCBSLA, Byrd filed a medical provider lien pursuant to La.R.S. 9:4752 on May 6, 2011, against Mr. Gibson and Farm Bureau Insurance company, the tortfeasor's insurer. The lien was for the undiscounted bill; a rate that exceeded the BCBSLA contracted price. The lien was filed despite Mr. Gibson's demands upon Byrd for it to submit his medical bills to BCBSLA. The lien was paid in full on December 1, 2011, by Farm Bureau, and the lien was released within two weeks of payment.

Gibson filed this lawsuit on July 25, 2016 via a pleading entitled Class Action Petition for Damages, for Breach of Contract, for Declaratory Judgment, and for Injunctive Relief. Mr. Gibson alleged that Byrd violated La.R.S. 22:1874,[1] i.e. the BBA, and violated its contract with him by collecting or attempting to collect amounts more than the reimbursement rate contracted with his insurer. Mr. Gibson further sought class certification to allow him to represent other people similarly situated in September 2016.

Byrd filed a Motion for Summary Judgment and Exception of Prescription in 2017, asserting, among other arguments, that no contract or agreement required Byrd to submit Mr. Gibson's bills to BCBSLA instead of pursing a medical lien and that any statutory claims under the BBA were subject to a one-year prescriptive period. Both motions were denied. The class was then certified on September 28, 2017, and

---

[1] Louisiana Revised Statutes 22:1874 states, in pertinent part:

A. (1) A contracted health care provider shall be prohibited from discount billing, dual billing, attempting to collect from, or collecting from an enrollee or insured a health insurance issuer liability or any amount in excess of the contracted reimbursement rate for covered health care services.

(2) No contracted health care provider shall bill, attempt to collect from, or collect from an enrollee or insured any amounts other than those representing coinsurance, copayments, deductibles, noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable.

Mr. Gibson was permitted to act as class representative. This court upheld the certification. *See Gibson v. Nat'l Healthcare of Leesville, Inc.*, 18-710 (La.App. 3 Cir. 3/7/19), 270 So.3d 664, *writ denied*, 19-555 (La. 5/28/19), 273 So.3d 316.

Following the Louisiana Supreme Court's decision in *DePhillips v. Hospital Services District No. 1 of Tangipahoa Parish*, 19-1496 (La. 7/9/20), 340 So.3d 817, holding that the BBA claim therein was delictual and subject to a one-year prescription period rather than contractual with a ten-year prescription period, Byrd filed the instant motions. Byrd alleged that Gibson's claims are delictual, not contractual, and therefore prescribed prior to the filing of his petition. In moving for class decertification, Byrd asserted that the *DePhillips* ruling constitutes a material change requiring decertification or, alternatively, a revision as to how the class is defined. After a hearing, the trial court denied both motions. Mr. Gibson argued in opposition that his claim is not governed by *DePhillips* because, unlike in *DePhillips*, Mr. Gibson introduced contracts to support his claim. Mr. Gibson specifically referred to the Assignment to argue that Byrd contracted or impliedly contracted not to balance bill. Furthermore, he suggests that provisions in the Assignment are ambiguous and must, therefore, be interpreted against Byrd.

The trial court denied Byrd's motion for summary judgment and motion to decertify the class action with a signed judgment on June 17, 2021. Byrd then filed a writ application seeking a reversal of the trial court's denial of summary judgment and appealed the trial court's denial of its motion to decertify the class. Because of the intertwining issues, the two matters were consolidated for consideration in this appeal.

Byrd assigns the following errors with the trial court's judgment:

(1) The [trial] court erred in finding that Byrd failed to meet its burden

of proving that no genuine issue of material fact existed concerning the issue of prescription.

(2) The [trial] court erred in denying Byrd's Motion for Summary Judgment.

(3) The [trial] court abused its discretion in denying Byrd's Motion to Decertify Class.

**DISCUSSION:**

In its motion for summary judgment, Byrd sought to have Mr. Gibson's claims dismissed as prescribed. Based on this conclusion, in its motion for decertification, Byrd asserts that because Mr. Gibson's claims were prescribed when he filed suit, and he is the only class representative, the class action must be decertified. Thus, in order to get to the question on appeal in docket number 21-757, we first must consider whether the trial court properly denied Byrd's motion for summary judgment.

*Docket Number 21-369, Summary Judgment (Prescription):*

In assignments of error numbers one and two, Byrd asserts the trial court erred in finding it did not prove its burden on summary judgment and erred in denying summary judgment.

While prescription is more often raised by a peremptory exception, it may also be raised in a motion for summary judgment. *King v. Town of Clarks*, 21-1897 (La. 2/22/22), 345 So.3d 422.

The grant or denial of a motion for summary judgment is reviewed de novo, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (citations omitted);

4

La.Code Civ.P. art. 966. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(A)(3) and (4). "A genuine issue is one about which reasonable persons could disagree." *King*, 345 So.3d at 422. "The burden of proof is on the party pleading prescription. Only if prescription is evident on the face of the petition does the burden shift to the plaintiff to show that the action has not prescribed." *Id.* at 423.

Byrd moved for summary judgment asserting "that there are no genuine issues of material fact and that plaintiff's claims are prescribed." In reaching this conclusion, Byrd argued that the supreme court's holding in *DePhillips*, 340 So.3d 817, declared claims based on the BBA, like Mr. Gibson's claims, are delictual and subject to a one-year prescriptive period. Byrd argued that Mr. Gibson's claims began to accrue on May 6, 2011, the day the medical lien was issued; thus, Mr. Gibson's claims prescribed well before he filed his petition on July 25, 2016. Furthermore, Byrd relies on *DePhillips* to dispose of Mr. Gibson's non-delictual claims and argues that Mr. Gibson does not have any claims outside of the BBA because, according to *DePhillips*, unless a contractual provision exists to the contrary, the duty placed on Byrd to not balance bill is derived from the BBA. Byrd alleges there is no such contract between Mr. Gibson and Byrd. Byrd attached several documents to its motion: Plaintiff's petition for damages, Mr. Gibson's deposition, Affidavit of Michael Lynch with attachments, Plaintiff's memorandum in opposition to Byrd's motion to compel arbitration, and the judgment in *Rabun v. St. Francis Medical Center, Inc.*

Mr. Gibson responded that Byrd breached provisions of the Assignment,

5

invoking a ten-year prescription period for breach of contract or quasi-contractual claims, or, alternatively, the Assignment is ambiguous and precludes summary judgment in favor of Byrd. In support, Mr. Gibson attached the affidavit of Danielle Conway, Vice President of Benefit Operations for BCBSLA; the affidavit of Ginger Bradley, BCBSLA Litigation Manager, with attachments including the Member Provider Agreement and Member Provider Policy and Procedure Manual between BCBSLA and Byrd; the affidavit of Linda Davis, Director of Patient Financial Services at Byrd, with attachment—the Assignment; the affidavit of Kim Gassie, BCBSLA Director, Provider Relations and Communications, with attachments—the Member Provider Policies and Procedures Manual and Member Provider Agreement; and excerpts from the BCBSLA deposition.

In *DePhillips*, 340 So.3d 817, the supreme court held that claims under the BBA are delictual, not contractual, in nature, thus are subject to a one-year prescriptive period. *DePhillips* involved consolidated cases filed by Matthew DePhillips and Earnest Williams. Mr. Williams' case was the only one involved in the supreme court's ruling. Mr. Williams similarly brought a class action against North Oaks Medical Center/North Oaks Health System ("North Oaks") alleging breach of contract and BBA violations. Mr. Williams was injured in a motor vehicle accident, insured at the time by BCBS. North Oaks submitted the claim to and was paid by BCBS, and North Oaks also filed a medical lien against the liability insurance claims for Mr. Williams's undiscounted charges.[2] Mr. Williams brought

---

[2] Unlike Mr. Williams's case, in Mr. DePhillips case, North Oaks refused to submit Mr. DePhillips's bill to BCBS. *DePhillips v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 17-1423 (La.App. 1 Cir. 9/5/19), 285 So.3d 1122, *aff'd*, 19-1496 (La. 7/9/20), 340 So.3d 817. Mr. DePhillips sought damages "arising from North Oaks' refusal to submit and/or accept payment from his insurer for such treatment, instead seeking to collect directly from DePhillips by maintaining an action at law for payment." *Id.* at 1125. In his petition, Mr. DePhillips "asserted

6

claims for violating the BBA, breach of contract, and declaratory relief. North Oaks filed an exception of prescription. The trial court, being bound by a prior appellate ruling determining that Mr. DePhillips was not a third party beneficiary to the contract between North Oak and BCBS, ultimately concluded that the one-year prescriptive period applied and the first circuit affirmed.[3] The supreme court granted writs "to resolve the circuit split and determine the proper prescriptive period for Balance Billing Act claims brought by insured patients against contracted healthcare providers." *DePhillips*, 340 So.3d at 821. The supreme court notes:

> Though the putative class action claims against North Oaks in plaintiff's petition, and the class definition itself, arise from the Balance Billing Act, plaintiff now argues that there is a contract between himself and North Oaks from which his claims arise. Other than a general reference to the fact that a contract "must exist," **plaintiff does not point to a specific contract**, instead arguing he benefits from a "system of contracts" or a "series of interconnected contracts," even in the absence of the Act. Therefore, he argues that under an implied contract theory or a quasi-contract theory, or both, the Civil Code supports a finding that North Oaks' obligations under the Act are *ex contractu*. Plaintiff asserts that the following Civil Code articles, all of which are

two causes of action: (1) a violation of the Balance Billing Act; and (2) a breach of contract involving the member provider agreement between North Oaks and BCBS." *Id.*

[3] The first circuit explains the writ ruling in *DePhillips*, 285 So.2d at 1125:

> Prior to the hearing on the motion to consolidate, BCBS removed the Williams case to federal court. North Oaks then filed peremptory exceptions in the DePhillips matter raising the objections of no right of action for breach of contract, no cause of action for claims arising before the effective date of the Billing Act, and prescription. Following a hearing on October 13, 2015, the trial court granted the exception raising the objection of no cause of action for claims arising before the effective date of the Balance Billing Act, but denied North Oaks' exceptions raising the objections of no right of action for breach of contract and prescription. A judgment was signed on November 2, 2015. North Oaks filed an application for supervisory writs seeking review of this ruling. On March 8, 2016, this court granted the writ in part, finding that DePhillips did not have a right of action to assert a claim for breach of the member provider agreement, as he was neither a party to the member provider agreement or a third-party beneficiary. *DePhillips v. Hosp. Service District No. 1 of Tangipahoa Parish*, 2015 CW 1589 (La. App. 1 Cir. 3/8/16)[, *writ denied*, 16-647 (La. 5/27/16), 191 So.3d 1073]. Accordingly, the judgment denying the exception raising the objection of no right of action for breach of contract was reversed, and the exception was sustained. The writ was denied with respect to the peremptory exception raising the objection of prescription.

7

subject to a ten-year prescriptive period, apply to the facts as alleged in his petition: duty of good faith (La. C.C. arts. 1759, 1893), intent of the parties (La. C.C. art. 2045), implied contractual provisions (La. C.C. arts. 2054, 2055), and payment of a thing not owed (La. C.C. art. 2299). Plaintiff's arguments are not persuasive.

As an initial matter, assuming for sake of argument the existence of a contract between plaintiff and North Oaks, plaintiff cannot circumvent the one-year prescriptive period applicable to his claims where the source of the underlying duty is statutory. "The mere fact that the circumstances arose in the context of a contractual relationship does not make the cause of action contractual." *Thomas v. State Employees Group Benefits Prog.*, 05-0392, p.5 (La. App. 1 Cir. 3/24/06), 934 So. 2d 753, 757. *See also Roger* [*v. Dufrene*], 613 So. 2d [947] at 948 [La.1993] (citing, *inter alia*, *Kozan v. Comstock*, 270 F.2d 839, 844-45 (5th Cir. 1959 (Wisdom, J.)); *Stewart*, *supra*, 2016 WL 1715192, at *5 ("[T]he existence of a contract between the parties is not determinative."); Ronald J. Scalise, Jr., 6 La. Civ. L. Treatise, Law of Obligations § 16.31 (2d ed. 2019) (where "the contract is not the basis for the wrongdoing party's liability but only the *occasion* for the commission of that party's tort, . . . the outcome of the dispute should be governed by the rules of delictual, rather than contractual, liability"). Thus, courts apply a delictual prescriptive period where, as here, the cause of action is delictual in nature.

Relatedly, plaintiff's arguments regarding the application of the duty of good faith, intent of the parties, and implied provisions are rooted in his claim that an implied contract existed between himself and North Oaks. Irrespective of whether plaintiff can successfully establish the existence of such a contract (*see supra* n.12), he fails to prove either the agreement to any provision not to balance bill or any breach by North Oaks. Even where a contract exists, "unless a specific contract provision is breached, Louisiana courts typically treat the action as a tort." *Richard v. Wal-Mart Stores, Inc.*, 559 F. 3d 341, 345 (5th Cir. 2009); *Stewart*, 2016 WL 1715192, at *5 (same). *See also Thomas*, 05-0392, p.4, 934 So. 2d at 757 (noting an insurer must "expressly assume" an obligation to maintain confidentiality in order for such a contractual duty to arise independently of tort law). **Plaintiff makes no allegations of any implied provision not to balance bill to which the parties agreed and offers no evidence to support his claim of an implied provision not to balance bill between himself and North Oaks**. *Governor Claiborne Apartments, Inc. v. Attaldo*, 256 La. 218, 235 So. 2d 574, 577 (1970) ("While assent to a contract may be implied, that implication must be established and cannot be presumed.").

*Id*. at 824–25 (footnotes omitted) (emphasis added).

Unlike Mr. Williams in *DePhillips*, 340 So.3d 817, in Mr. Gibson's case, Byrd

refused to submit Mr. Gibson's bills to BCBSLA. Furthermore, and significantly, Mr. Gibson introduced evidence, which included the Assignment, Member Provider Policy, and Procedure Manual, via his opposition to support his claim of contractual and implied contractual provisions. While Byrd relies upon *DePhillips* for support of its argument that consumers have no contractual cause of action for violations of the BBA, Byrd would have this court ignore the fact that in *DePhillips*, there was no contract between Williams and North Oaks Hospital introduced into evidence.

In support of his claim, Mr. Gibson cites the Assignment, which states, "I understand that I am responsible for any charges not covered by my insurance company." Mr. Gibson argues that "[t]he charges covered by plaintiffs health insurance would reduce [the] allowable charge. . . . When the contracted provider has the insured consumer agree to pay the charges not covered by health insurance, the clear implication is that the consumer will not have to pay charges covered by the insurance." Furthermore, the Assignment obligates Mr. Gibson to pay "the account of the Facility in accordance with the regular rates and terms of the Facility." Mr. Gibson argues that the term "regular rates and terms" is, at the very least, ambiguous and may mean the master charge rate for non-BCBSLA insureds, but for insureds, it "should be determined in accordance with how the hospital regularly handles and charges those with insurance." As to the portion of the Assignment assigning Byrd injury benefits payable due to the liability of a third party, Mr. Gibson notes that Louisiana law prohibits assigning obligations that are strictly personal, and actions for personal injury damages are strictly personal. Mr. Gibson further argues that the Member Provider Policy and Procedure Manual sets forth the "regular terms" applicable to its consumers.

We agree that the Assignment obligates Mr. Gibson to pay those amounts not

covered by his insurance, yet Byrd also refused to submit Mr. Gibson's bills to his insurer. After reviewing *DePhillips* and the documents admitted in the current case, we find the distinctions between this matter and *DePhillips* warrant upholding the trial court's denial of summary judgment. Based on the documents admitted, we cannot conclude on summary judgment that Byrd is under no contractual obligation to file a claim with Mr. Gibson's medical insurer before, or instead of, filing a medical lien against the patient. The consequence of saying a hospital's contract obligates the patient to pay the bill but does not obligate the hospital to first bill the patient's insurer could lead to unjust priority treatment of patients whose services stem from accidental injuries for whom someone other than the patient is responsible. Hospitals get paid the non-discounted rates when they can file medical liens instead of billing and accepting the discounted contractual rate. This cannot be what was intended by the "protections" in La.R.S. 22:1874 from billing by contracted healthcare providers. The patient does not get a bill, but the patient does get a medical lien that is cancelled only if and when he files suit against the responsible party.

Additionally, regarding Mr. Gibson's BBA claims, the supreme court's *DePhillips* decision did not address the issue of *when* prescription begins to run under the BBA. Rather, that issue was remanded to the trial court for an evidentiary hearing to consider the issue of when prescription begins to run.

Accordingly, we find that the trial court's denial of Byrd's motion for summary judgment in docket number 21-369 was proper.

***Docket Number 21-757, Decertification:***

In its motion to decertify class, Byrd first argues that because Mr. Gibson's claims were prescribed when he filed suit and he is the only class representative, the

10

dismissal of his claims requires the decertification and dismissal of the entire class. Second, Byrd argues that the class claims are entirely based on the BBA; thus, even if Mr. Gibson's contractual claims persist, he cannot adequately represent the class because his BBA claims are prescribed. Third, Byrd argues that applying a one-year prescription period to the BBA claims as required by *DePhillips* prevents the class from meeting the numerosity requirement. Byrd emphasizes that "Byrd's Lien Policy stopped in July of 2013 . . . Therefore, it is highly unlikely that there are ***any*** insured patients from whom Byrd sought payment of the full undiscounted medical charges through the issuance of a lien ***after*** July 25, 2015."

Decertification of a class action is contemplated by La.Code Civ.P. art. 592(A)(d) which states:

> In the process of class certification, or at any time thereafter before a decision on the merits of the common issues, the court may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action.

The standard of review applicable to reviewing a decision regarding class certification is abuse of discretion. *Mire v. Eatelcorp., Inc.*, 04-2603 (La.App. 1 Cir. 12/22/05), 927 So.2d 1113, *writ denied*, 06-209 (La. 4/24/06), 926 So.2d 549.

The class herein was defined as:

All persons currently and/or formerly residing in the State of Louisiana during the period from May 1, 2005 to July 1, 2013:

(1) Having "Health Insurance Coverage' [as defined by La. R.S. 22:1872(18)] providing coverage for themselves or for others for whom they are legally responsible, with any "Health Insurance Issuer" [as defined by La. R.S. 22:11872(19)] at the time "covered health care services" [as defined by La. R.S. 22:1872(8)] were provided by any company owned and/or operated by **BYRD**; and,

(2) With which "Health Insurance Issuer" and company owned and/or operated by **BYRD** was a "contracted health care provider" at the time of service [as defined by La. R.S. 22:1872(6)]; and,

11

(3) From whom **BYRD** and/or any company owned and/or operated by **BYRD** collected, and/or attempted to collect, the "Health Insurance Issuer's Liability" [as defined by La. R.S. 22:1872(20)], including, but not limited to, any collection or attempt to collect from any settlement, judgment or claim made against any third person or insurer who may have been liable for any injuries sustained by the patient which insurers include those providing liability coverage to third person, uninsured/underinsured coverage, and /or medical payments coverage); and/or,

(4) From whom **BYRD** and/or any company owned and/or operated by **BYRD**, collected, and/or attempted to collect, any amount in excess of the "Contracted Reimbursement Rate" [as defined by La. R.S. 22:1872(7)], including but not limited to, any collection or attempt to collect from any settlement, judgment, or claim made against any third person or any insurer which may have been liable for any injuries sustained by the patient (which insurers include those providing liability coverage to third person, uninsured/underinsured coverage, and/or medical payments coverage); and/or

(5) From whom **BYRD** and/or any company owned and/or operated by **BYRD** collected, and/or attempted to collect, any amount without first receiving an explanation of benefits or other information from the Health Insurance Issuer setting forth the liability of the insured as required by La. R.S. 22:1874(A)(2) and (3).

Byrd suggests that, because *DePhillips* was a change in law, decertification is proper in this case. Byrd argues that the list of potential plaintiffs is reduced to only fourteen after applying a one-year prescriptive period, assuming the lien practice ended in July of 2013, and using the date Byrd was added as a defendant to the *Stewart* litigation, which was December 18, 2013. Using the table admitted into evidence, which lists no information as to the categories other than "Eligible" or "Not eligible[,]" which is not explained, it is difficult for this court to determine any potential plaintiffs without further explanation. Even limiting the plaintiffs by the parameters set forth by Byrd, but with no explanation as to eligible or ineligible, there could be anywhere from fifteen to over seventy-five plaintiffs.

12

First, we note that numerosity is not determined solely by finding a specific number of plaintiffs exist but is a consideration of "the facts and circumstances of each individual case." *Gibson v. Nat'l Healthcare of Leesville, Inc.*, 18-710, p. 5 (La.App. 3 Cir. 3/7/19), 270 So.3d 664, 669, *writ denied*, 19-555 (La. 5/28/19), 273 So.3d 316.

> While the determination of numerosity is in part based upon the number of putative class members, it is also based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claim. *Davis v. American Home Products Corp.,* 02–0942, p. 19 (La.App. 4 Cir. 3/26/03), 844 So.2d 242, 257, *writ denied,* 03–1180 (La.6/27/03), 847 So.2d 1279. Ultimately, to meet this requirement, the plaintiff must show joinder is impractical, but, at the same time, there is a definable group of aggrieved persons. *Dumas* [*v. Angus Chem. Co.*, 25,632 (La.App. 2 Cir. 3/30/94),] 635 So.2d [446] at 450[, *writ denied*, 94-1120 (La. 6/24/94), 640 So.2d 1349].

*Baker v. PHC-Minden, L.P.*, 14-2243, p. 19 (La. 5/5/15), 167 So.3d 528, 542.

Second, as discussed above, we find the facts in this case are distinguishable from *DePhillips*, thus, Byrd has not demonstrated how the decision in *DePhillips* mandates decertification in the current case. Furthermore, the class action petition pursues the same claims as Mr. Gibson pursues;[4] thus, the reasoning above applies to those actions as well. Additionally, class members will also be affected by the determination of when prescription under the BBA begins to run. As previously mentioned, the supreme court's *DePhillips* decision did not address the issue of *when* prescription begins to run under the BBA. Rather, that issue was remanded to the trial court.

---

[4] One of the alleged common questions of law in the petition was: "Whether Defendant violated their contracts with patients by attempting to collect and/or collecting more than the patient owed[.]"

At this time, considering the above discussion, we cannot say that the trial court abused its discretion in denying Byrd's motion to decertify the class.

**DECREE:**

The judgment of the trial court denying National Healthcare of Leesville, Inc. d/b/a Byrd Regional Hospital's motion for summary judgment and motion for decertification of the class action certified in conjunction with Dennis Gibson's claim is affirmed. All costs of this matter are assessed to National Healthcare of Leesville, Inc. d/b/a Byrd Regional Hospital.

**WRIT DENIED; DENIAL OF MOTION TO DECERTIFY CLASS ACTION AFFIRMED.**

DENNIS GIBSON, INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED

VERSUS

NATIONAL HEALTHCARE OF LEESVILLE, INC.
D/B/A BYRD REGIONAL HOSPITAL


**PICKETT, Chief Judge, dissents and assigns reasons.**

I respectfully dissent from the majority's decision to affirm the trial court's denial of the motion for summary judgment and motion to decertify the class action filed by National Healthcare of Leesville, Inc. d/b/a Byrd Regional Hospital's (Byrd). Byrd filed a motion for summary judgment asking that this matter be dismissed because it is prescribed.  In order to determine whether a one-year or ten-year prescriptive period applies, we must look at the underlying facts.  For the following reasons, I dissent and would grant Byrd's motions and dismiss Mr. Gibson's claims against Byrd and decertify the class action.

*Balance Billing Act Claims*

Mr. Gibson argues Byrd contractually assumed an obligation not to balance bill his medical expenses, citing "I understand that I am responsible for any charges not covered by my insurance company[,]" which appears in the Assignment.  He further argues the Assignment is ambiguous because it provides:  "I understand that I am obligated to pay the account of the Facility in accordance with the regular rates and terms of the Facility."  To prove these claims, Mr. Gibson seeks to link the Assignment to BCBSLA's agreements with Byrd.  However, nothing in the

Assignment links it to BCBSLA's agreements, and the MPA specifically provides that it does not inure to the benefit of third parties.

Byrd asserts nothing in the Assignment links it to the BBA, Mr. Gibson's health insurance coverage with BCBSLA, BCBSLA's Member Provider Agreement ("MPA") that it executed, or BCBSLA's Policy and Procedure Manual, which "sets forth the policies and procedures to be followed by the [healthcare] provider when providing health care services to BCBSLA members and submitting claims to BCBSLA"[1] and concludes nothing obligates it to pursue payment only from BCBSLA. Byrd further argues Mr. Gibson attempts to create ambiguity where none exists when he seeks to link the terms of the MPA and/or the Policy and Procedure Manual to the Assignment because neither document is referenced in the Assignment. Byrd also points out Mr. Gibson has admitted BCBSLA insureds are not parties to the MPA and the MPA precludes third-party beneficiary status for BCBSLA insureds.[2]

> In interpreting contracts, we are guided by the general rules contained in articles 2045-2057 of the Louisiana Civil Code. The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning. La.Civ.Code arts. 2045, 2047; *see e.g., Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.*, 93-911 (La.1994), 630 So.2d 759, 763. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. Civ.Code art. 2046.

*Campbell v. Melton*, 01-2578, p. 6 (La. 5/14/02), 817 So.2d 69, 74-75.

Additionally, "the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Peterson v. Schimek*, 98-1712, p. 5 (La. 3/2/99), 729 So.2d 1024,

---

[1] The Director, Provider Relations and Communications of BCBSLA, made this statement in an affidavit filed in opposition to the exception of prescription.

[2] The MPA states, in pertinent part: "This Agreement is not a third party contract and is not intended to confer any benefits nor legally enforceable right to any third party." Mr. Gibson made this admission in opposition to Byrd's motion to order arbitration.

1029. Although one party may create a dispute about what a contract provision means, that alone does not render the provision ambiguous. *Campbell*, 817 So.2d 69.

The first section of the Assignment addresses Byrd's recoupment of the medical expenses Mr. Gibson incurred after being injured. It authorized Byrd to collect "all insurance benefits, sick benefits, injury benefits due because of liability of a third-party, or proceeds of all claims resulting from the liability of a third party, payable by any party, organization, et cetera." As written, this provision does not require or imply that Byrd must collect benefits from any of the identified sources in any particular order. The two statements cited by Mr. Gibson obligate him to pay "any charges not covered by my insurance company" and to pay those charges "in accordance with the regular rates and terms of the Facility." Neither statement obligates Byrd to do or not do anything with respect to Mr. Gibson.

Mr. Gibson contends the Assignment is invalid because it assigns a personal right which is prohibited by La.Civ.Code art. 2642. Pursuant to La.Civ.Code art. 2034, "Nullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision." Mr. Gibson made no such showing.

Byrd collected Mr. Gibson's medical expense pursuant to La.R.S. 9:4752, which grants a limited medical privilege to health care providers and hospitals for their reasonable charges or fees collected from third parties. Mr. Gibson urges this practice violates the conclusion reached in *Rabun v. St. Francis Medical Center, Inc.*, 50,849 (La.App. 2 Cir. 8/10/16), 206 So.3d 323. There the court relied upon agreements between the defendant hospital and the plaintiff's insurer without identifying a specific contractual provision to conclude the plaintiff's "medical expenses could not exceed the contracted rate provided in her member provider agreement." *Id*. at 328. Following *DePhillips v. Hospital Service District No. 1 of*

3

*Tangipahoa Parish*, 19- 1496 (La. 7/9/20), 340 So.3d 817, and *Wightman v. Ameritas Life Insurance Co.*, 22-264 (La. 10/21/22), __ So.3d __, this conclusion is required only if Byrd violated its contract with Mr. Gibson.

Mr. Gibson argues the Assignment's requirement that he pay "any charges not paid by my insurance company" implies Byrd is entitled only to collect those payments made pursuant to its agreements with BCBSLA. I do not agree. This argument relies upon Byrd's contracts with BCBSLA to create a contractual obligation in favor of Mr. Gibson. Those contracts limit what Byrd can collect from a BCBSLA insured only if it files a claim for payment of the insured's medical expenses. Byrd did not do so here.

Mr. Gibson further argues the Assignment and Byrd's contractual agreements with BCBSLA imply Byrd limited its right to collect his medical expenses from BCBSLA alone. Section 1 of the Assignment identifies different sources for Byrd's collection of medical expenses: "all insurance benefits, sick benefits, injury benefits due because of liability of a third-party, or proceeds of all claims resulting from the liability of a third party" and directly from the patient. This provision does not mandate the circumstances under which any of these methods of collection must be used. For these reasons, I do not find a genuine issue of material fact exists as to whether Byrd is limited to accepting Mr. Gibson's health insurance in payment for his medical expenses.

Lastly, Mr. Gibson's argues the Assignment's provision that the patient will pay his account "in accordance with the regular rates and terms of the Facility" is ambiguous when considered in conjunction with Byrd's contracts with BCBSLA. Again, the Assignment does not require Byrd to recoup Mr. Gibson's medical expenses from BCBSLA, and it did not do so. Therefore, I conclude no genuine issue of material fact exists as to whether this phrase is ambiguous.

4

In my opinion, Mr. Gibson has not proved Byrd's Assignment obligated it not to balance bill his medical expenses. Accordingly, I would grant Byrd's motion for summary judgment, and dismiss with prejudice Mr. Gibson's claims against it.

*Decertification*

Mr. Gibson asserts the class action need not be decertified, citing La.Code Civ.P. art. 596(A) which provides, in pertinent part: "Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein."

In *Leet v. Hospital Service District No. 1 of East Baton Rouge Parish*, 20-745, (La.App. 1 Cir. 2/25/21), 322 So.3d 274, *writ denied*, 21-445 (La. 6/22/21), 318 So.3d 31, fn. 12, the court recognized that a class representative's class action no longer exists if he is no longer a member of the defined class. The prescriptive period provided in La.Code Civ.P. art. 596(A) is suspended only if a class action proceeding was timely filed against the defendant. *Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 12-152 (La. 11/2/12), 118 So.3d 1011. *See also Ansardi v. Louisiana Citizens Prop. Ins. Corp.*, 11-1717, 12-166 (La.App. 4 Cir. 3/1/13),111 So.3d 460, *writs denied*, 13-697, 13-698 (La. 5/17/13), 118 So.3d 380, where the court held that unless the class-action lawsuit upon which the insured plaintiff relied for the suspension or interruption of the prescriptive period was timely filed, the class-action did not suspend or interrupt the prescriptive period for his action against the state's insurer of last resort.

Mr. Gibson cites the cases of *Gunderson v. F.A. Richard & Assoc.*, 10-61 (La.App. 3 Cir. 6/2/10), 40 So.3d 418, and *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553 (1975), as support for his argument that the class should not be decertified in regard for the due process interests of the unnamed putative class members who relied upon the filing of the class action. In *Gunderson*, 40 So.3d 418, this court refused to

5

decertify a class action when no class representatives remained before the court because they had all been enjoined by a federal court from pursuing their claims. In reaching this conclusion, the court looked to *Sosna*, 419 U.S. 393, 95 S.Ct. 553, where the Supreme Court held that even where a controversy is no longer "alive" as to the named plaintiff in a class action, a class action, once certified, may acquire a legal status separate from the interest asserted by the named plaintiff. For a class action to acquire its own legal status, "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Id.*, 419 U.S. at 403, 95 S.Ct. at 559.

Byrd argues Mr. Gibson was not a member of the class he sought to represent when he filed suit or when the action was certified because his claim had prescribed before he filed suit. Accordingly, the class action herein never attained its own legal status, and prescription was not suspended as provided by La.Code Civ.P. art. 596(A).

## CONCLUSION

The majority notes the supreme court did not pronounce when prescription begins to run on a BBA claim. As discussed above, I do not believe Mr. Gibson has shown a genuine issue of material fact exists as to whether Byrd contractually assumed an express or implied obligation to forgo balance billing. Therefore, his claim that Byrd had an obligation not to balance bill him for medical expenses is statutory in nature and subject to a one-year prescriptive period. *DePhillips v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 19-1496 (La. 7/9/20), 340 So.3d 817, and *Wightman v. Ameritas Life Ins. Corp.*, 22-364 (La. 10/21/22), 351 So.3d 690. Mr. Gibson had one year to assert his claim against Byrd. Based on his pleadings, he knew in December 2011 that Byrd did not collect its medical expenses from BCBSLA. Therefore, based on the allegations of his petition, Mr. Gibson's claim had prescribed when he filed suit in 2016, and he had the burden of proving it had not prescribed. *Kinnett v. Kinnett*, 20-1134 (La. 10/10/21), 332 So.3d 1149.

6

For these reasons, I agree with Byrd that the class action never attained its own legal status and prescription was not suspended. Accordingly, I would grant the motion for summary judgment and decertify the class action.